# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00712-GPG-KAS

LEPRINO FOODS COMPANY,

        Plaintiff,

    v.

UNITED HEALTHCARE SERVICES, INC.,

        Defendant.

---

## DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS

---

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     PLAINTIFF'S ALLEGATIONS ...............................................................................3

        A.      The Parties and the Plan..................................................................................3

        B.      Leprino's Lawsuit ...........................................................................................4

III.    LEGAL STANDARD.................................................................................................5

IV.     ARGUMENT ...............................................................................................................6

        A.      ERISA Expressly Preempts Leprino's Breach of Contract Claim...........................7

        B.      Leprino's Breach of Fiduciary Duty Claim Fails As A Matter Of Law ...............10

                a.      Leprino cannot remedy injuries to itself as an employer sponsor
                        under ERISA .......................................................................................11

                b.      Leprino's allegations seeking to remedy Plan losses also fail..................13

V.      CONCLUSION..........................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)....................................................................................................7

*Alvarado v. KOB–TV, L.L.C.*,
493 F.3d 1210 (10th Cir. 2007) ..................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................5, 6

*AutoNation, Inc. v. United Healthcare Ins. Co.*,
423 F. Supp. 2d 1265 (S.D. Fla. 2006) .......................................................................9

*Bd. of Trustees for Hampton Roads Shipping Assoc.—Int'l Longshoremen's Assoc.
v. Stokley*,
618 F. Supp. 2d 546 (E.D. Va. 2009) ..........................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................5, 6

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003)......................................................................................................6

*Conkright v. Frommert*,
559 U.S. 506 (2010)..................................................................................................1, 6

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*,
102 F.3d 712 (4th Cir. 1996) .....................................................................................11

*David P. Coldesina, D.D.S., P.C., Emp. Profit Sharing Plan & Trust v. Estate of
Simper*,
407 F.3d 1126 (10th Cir. 2005) ..................................................................................8

*Express Oil Change, LLC v. Anb Ins. Servs.*,
933 F. Supp. 2d 1313 (N.D. Ala. 2013)......................................................................8

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)......................................................................................................6

*Fortelney v. Liberty Life Assur. Co. of Bos.*
790 F. Supp. 2d 1322, 1351 (W.D. Okla. 2011) ........................................................9

*Foster v. PPG Indus., Inc.*,
    693 F.3d 1226 (10th Cir. 2012) ...........................................................................14

*Gilbertson v. Allied Signal, Inc.*,
    328 F.3d 625 (10th Cir. 2003) .............................................................................15

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99, 108 (2013)........................................................................................13

*ING Inves. Plan Servs., LLC v. Barrington*,
    No. 09–3788, 2010 WL 3385531 (N.D. Ill. Aug. 24, 2010)....................................9

*Ingersoll–Rand Co. v. McClendon*,
    498 U.S. 133 (1990)...............................................................................................8

*Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*,
    633 F.3d 1022 (10th Cir. 2011) .............................................................................3

*K.H.B. by & through Kristopher D.B. v. UnitedHealthcare Ins. Co.*,
    No. 2.18-CV-000795-DN, 2019 WL 4736801 (D. Utah Sept. 27, 2019)..............12

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
    555 U.S. 285 (2009)..............................................................................................13

*Metro. Life Ins. Co. v. DePalo*,
    No. CIV.A. 13-3092 KM, 2014 WL 4681094 (D.N.J. Sept. 22, 2014)...................8

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)............................................................................................1, 6

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).................................................................................................7

*Settles v. Golden Rule Ins. Co.*,
    927 F.2d 505 (10th Cir. 1991) ...........................................................................7, 9

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
    578 F.3d 505 (7th Cir. 2009) .....................................................................2, 11, 12

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983).................................................................................................8

*Sonoco Products Co. v. Physicians Health Plan, Inc.*,
    338 F.3d 366 (4th Cir. 2003) ...............................................................................11

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ........................................................................13

*Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*,
   584 Fed. Appx. 918 (10th Cir. 2014) .............................................................14

**Statutes**

29 U.S.C. §§ 1102(a)(1), (b)(4) .............................................................................13

29 U.S.C. § 1132(a)(2) .......................................................................................4, 11

29 U.S.C. § 1132(a)(3) ............................................................................................11

29 U.S.C. § 1104(a) ............................................................................................4, 13

29 U.S.C. § 1109(a) ............................................................................................4, 11

29 U.S.C. § 1144(a) ..............................................................................................2, 7

**Other Authorities**

Rule 12(b)(6) .......................................................................................................5, 13

## I.    INTRODUCTION

United HealthCare Services, Inc. ("United") served as a Claims Administrator for Plaintiff Leprino Foods Company's ("Leprino") health plan. In that capacity, United adjudicated health benefits claims under the ERISA-governed and self-funded Leprino Health Plan (the "Plan") that Leprino offered to its employees. Leprino alleges that, in carrying out this function, United improperly paid claims for healthcare services rendered by healthcare providers, which led Leprino to sue providers to recover those payments. Based on these purported facts, Leprino pleads two claims against United: one for breach of fiduciary duty under ERISA (Claim One) and another for breach of contract (Claim Two). Both claims fail as a matter of law and the Court should dismiss them at the pleading stage.

ERISA is a comprehensive statute and its remedies are narrowly drawn. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). In crafting ERISA's statutory scheme, Congress carefully considered what remedies to include and exclude. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). Congress' chief concern in crafting ERISA was balancing how to incentivize employer sponsored plans without weighing them down with administrative burdens and unpredictable liabilities. *Conkright*, 559 U.S. at 517 (noting ERISA was designed to "induce" more employers to adopt benefits plans, and "assur[e] a predictable set of liabilities," under "uniform standards" for plan administration and by offering "'uniform . . . remedi[es]'"). As a consequence, ERISA does not permit all remedies arising from purported misconduct that relates to the administration of a health benefits plan. *See id.* Here, Leprino attempts to skirt the limited remedies ERISA provides in the context of allegedly overpaid benefits claims. The Court should dismiss its Complaint for two reasons.

*First*, ERISA preempts Leprino's breach of contract claim. Under ERISA's preemption provision, common law claims that "relate to" a health benefits plan, like the breach of contract claim here, are preempted. 29 U.S.C. § 1144(a). Leprino's breach of contract claim "relates" to the Leprino health benefits plan because United's alleged overpayment of plan benefits hinges on whether the Plan covered the allegedly fraudulent services. *See* Compl. ¶ 81 (alleging United "improperly pa[id] claims and then fail[ed] to recover overpayments."); *id.* ¶ 30 (alleging United had "discretionary authority … to decide whether a claim should be paid and, if so, what to pay for it."); *id.* ¶ 35 (alleging United paid claims which were "mislabeled as having been other types of medically necessary services."). Leprino's breach of contract claim thus falls squarely within the ambit of ERISA's broad preemption provisions.

*Second*, Leprino's ERISA breach of fiduciary duty claim fails as a matter of law. Leprino pleads, among other things, that it suffered losses as a Plan sponsor distinct from the losses to the Plan. *E.g.*, Compl. ¶ 3 (alleging "United has caused Leprino to expend substantial legal fees and costs pursuing recoupment from those providers that United improperly paid"). As courts have explained, ERISA does not provide a remedy for "damages and expenses to [a plan sponsor], as a company." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009). As a result, Leprino's breach of fiduciary claim is deficient and should be dismissed.

Additionally, Leprino takes issue with a number of claims that United allegedly paid. *See* Compl. ¶ 35 (alleging that United paid claims that were submitted by providers as "false bills" "mislabeled as having been other types of medically necessary services."). But rather than pointing to misapplied Plan terms or express Plan procedures United allegedly failed to follow, Leprino contends that United did not properly investigate the healthcare providers who submitted the

claims before paying them. Leprino has not alleged that the Plan requires such an investigation before paying claims. Nor does ERISA, and for good reason: the process that Leprino seeks to impose under ERISA would grind healthcare reimbursement to a halt. *See id.* ¶ 74 (alleging United "breached its fiduciary duties by … approving claims for benefits that contained indicia of fraud without first determining (either through an investigation or otherwise) that the claims were legitimate, non-fraudulent and covered by the Leprino Plan…."). Neither ERISA nor courts interpreting it require claim administrators to review external documents before paying claims so long as they appear legitimate. Leprino does not allege that the claims did not appear legitimate on their face.

United therefore respectfully requests that the Court dismiss Leprino's Complaint in its entirety with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS[1]

### A.    The Parties and the Plan

Leprino offers a welfare benefits plan to its employees and dependents that includes health benefits coverage that it self-funds. Leprino alleges that it contracted with United to administer claims under the Leprino Plan for plan participants and, in 2015, entered into an administrative services agreement with United. *See* Compl. ¶¶ 1, 23. The ASA is a contract covering specified services United provided to Leprino, "for use with [Leprino's] self-Funded employee benefit plan and appl[icable] to claims for Plan benefits." Compl. Ex. 1. Under the ASA, United agreed to

---

[1] For purposes of this motion only, United adopts the well-pleaded facts in the Complaint as true and restates them in the light most favorable to Leprino. *See Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). In so doing, United does not concede that these facts are true.

provide claim determinations and appeal services to Leprino. *See* Compl. ¶¶ 1, 23. Leprino also delegated to United the "discretionary authority to (i) construe and interpret the terms of the Plan, (ii) to determine the validity of charges submitted to [United] under the Plan, and (iii) make final, binding determinations concerning the availability of Plan benefits under the Plan's internal appeal process." Compl. Ex. 1 at 12.

### B.     Leprino's Lawsuit

Leprino alleges that three surgical centers and several surgeons allegedly induced Plan members to "travel far . . . to create false bills" for healthcare services that were not provided or were not covered or otherwise medically necessary. Compl. ¶¶ 34-35. Leprino contends that United wrongly paid the healthcare claims in dispute because it should have known that they were fraudulent when presented for payment. *Id.* ¶¶ 36, 43. Leprino nonetheless admits that United investigated the claims at issue at length, including conducting its own detailed investigation and reporting its findings to the Federal Bureau of Investigation. *Id.* at ¶¶ 44-46, 49. Leprino also concedes that United ceased paying any claims from the suspect surgical centers and surgeons as of October 2022. *Id.* ¶ 56.

Leprino brings Claim One—breach of fiduciary duty under ERISA—under 29 U.S.C. §§ 1132(a)(2), (a)(3), 1104(a), and 1109(a). *Id.* ¶ 71. Leprino alleges that United owed Leprino several fiduciary duties, including: the duty to discharge its obligations to Leprino with certain "care, skill, prudence, and diligence"; the duty "to manage and administer the Leprino Plan solely in the interest of the plan's participants and beneficiaries"; a "negative duty not to misinform"; "an affirmative duty to inform"; and a "duty to discharge its obligations in accordance with the terms of the Leprino Plan's documents." *Id.* ¶¶ 71-73. Leprino further claims United violated these

fiduciary duties "by engaging in wrongful acts and practices including, but not limited to, approving claims for benefits that contained indicia of fraud without first determining (either through an investigation or otherwise) that the claims were legitimate, non-fraudulent and covered by the Leprino Plan; not recovering from providers amounts paid pursuant to fraudulent or otherwise improper claims; misrepresenting the nature of ongoing recovery attempts and law enforcement investigations; withholding crucial documentation related to the losses to which Leprino was entitled; and continuing to pay claims even after they uncovered evidence of fraud." *Id.* ¶ 74. Leprino seeks several remedies under this claim, including "(i) the recovery of all losses resulting from United's breach of its fiduciary duty, (ii) the recovery of all benefit or profits United may have made through its breach of its fiduciary duty, (iii) surcharge, (iv) all such other equitable relief as may be appropriate, and (v) the recovery of Leprino's attorneys' fees and costs." *Id.* ¶ 77.

Leprino brings Claim Two under a breach of contract theory, specifically alleging that United "breached the ASA by improperly paying claims and then failing to recover overpayments." *Id.* ¶¶ 78-84. Under this claim, Leprino seeks recovery of "losses resulting from [United's] breach of its contractual obligations," "benefit or profits [United] may have made as a result of its breach," surcharge, and other equitable relief, as well as its attorneys' fees. *Id.* ¶ 84.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires "more than the sheer possibility that a defendant has acted unlawfully." *Id.* While a court should accept all well-pleaded facts as true and construe them in the light most favorable to the non-moving party, a court need not accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast in the form of factual allegations. *See Twombly*, 550 U.S. at 550. "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007) (citations omitted).

The Supreme Court has emphasized the importance and applicability of the federal pleading standard in ERISA actions and encouraged courts to apply scrutiny at the pleading stage to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This "important task" should be accomplished by a "careful, context-sensitive scrutiny of a complaint's allegations." *Id.*

## IV. ARGUMENT

ERISA "'is an enormously complex and detailed statute,' and the plans that administrators must construe can be lengthy and complicated." *Conkright*, 559 U.S. at 509 (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 262 (1993). To ease the administrative and cost burdens associated with administering such plans, Congress narrowly crafted the acts for which a claim administrator could be held liable. *Metro. Life Ins. Co.*, 481 U.S. at 64-65. "[J]udicial innovation" as to ERISA's mandates is thus discouraged. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). In that same vein, Congress expressly preempted conflicting state laws and claims that could easily disrupt Congress' well balanced ERISA regime. Leprino's breach of contract

claim fails because it attempts to evade Congress' expert weighing of the liabilities to which ERISA subjects claim administrators. 29 U.S.C. § 1144(a); *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508-09 (10th Cir. 1991). Similarly, Leprino's ERISA breach of fiduciary duty claim fails because Leprino is not an appropriate plaintiff for the remedies it requests. To distance itself from this well-settled precedent, Leprino conjures several red herrings, including United's purported failure to investigate the now disputed claims and misrepresentations United allegedly made regarding the extent and status of its investigation. Setting aside that these allegations are false, ERISA does not require a claim administrator to investigate external documents prior to paying claims for benefits. The Court should dismiss the Complaint.

### A.    ERISA Expressly Preempts Leprino's Breach of Contract Claim

Leprino's breach of contract claim (Claim Two) seeks recovery of allegedly overpaid benefits (*i.e.*, benefits paid from plan assets). *E.g.*, Compl. ¶ 84 (seeking "the recovery of any and all losses resulting from United's breach of its contractual obligations"), ¶ 32 (claiming that "under the ASA, United had a duty to 'determine whether a benefit is payable under the Plan's provisions'"). But Congress expressly preempted such state law claims under ERISA because they "relate to" a health benefits plan.

ERISA's express preemption provisions are integral to its balancing act and provide that ERISA "supersede[s] any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Those provisions "are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46 (1987) (internal quotation omitted); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, (2004) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981))

(ERISA's expansive preemption provisions "are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983) (footnote omitted). Even if a state law does not specifically regulate an ERISA plan or only affects such a plan indirectly, it still "relate[s] to" a plan. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

The Tenth Circuit recognizes four categories of state laws that ERISA preempts: "(1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans." *David P. Coldesina, D.D.S., P.C., Emp. Profit Sharing Plan & Trust v. Estate of Simper,* 407 F.3d 1126, 1136 (10th Cir. 2005). Alleged contract breaches due to overpayment of claims fall into category (4) and are preempted. *See, e.g., Express Oil Change, LLC v. Anb Ins. Servs.*, 933 F. Supp. 2d 1313, 1336-37 (N.D. Ala. 2013) (ERISA preempted breach of contract claim based on claim overpayments because the claim turned on whether claims administrator properly applied the terms of the plan).

The crux of Leprino's claim for breach of contract is its assertion that United "improperly [paid] claims" and "fail[ed] to recover overpayments." Compl. ¶ 81. Determining whether a claim was improperly paid requires interpreting the Plan's terms under which benefits arise. *See Metro. Life Ins. Co. v. DePalo*, No. CIV.A. 13-3092 KM, 2014 WL 4681094, at *10 (D.N.J. Sept. 22, 2014) (explaining in overpayment case that "[t]he proposed state law claims in this case clearly arise from an ERISA plan, direct the Court's inquiry to the Plan, require an analysis of the Plan's

terms, and involve the calculation and payment of benefits due to a Plan participant"). Cases alleging benefits overpayment thus implicate ERISA because they "relate" to the plan. *AutoNation, Inc. v. United Healthcare Ins. Co.*, 423 F. Supp. 2d 1265, 1267 (S.D. Fla. 2006); *see also ING Inves. Plan Servs., LLC v. Barrington*, No. 09–3788, 2010 WL 3385531, at *2 (N.D. Ill. Aug. 24, 2010) (ERISA preempted plan administrator's state law claims for quantum meruit and money had and received because the overpayment allegations would "necessarily require consulting the terms of the Plan itself"); *Bd. of Trustees for Hampton Roads Shipping Assoc.—Int'l Longshoremen's Assoc. v. Stokley*, 618 F. Supp. 2d 546, 553 (E.D. Va. 2009) (ERISA preempted plan administrator's state law breach of contract claim against employee for paid benefits repayment).

Similarly, courts in this circuit regularly find that ERISA preempts state law causes of action for overpayments. For example, in *Fortelney v. Liberty Life Assur. Co. of Bos.*, plaintiffs challenged the defendant's benefits calculation payable under a long-term disability insurance policy, alleging that the defendant made "material misrepresentations regarding the amount of the alleged overpayments" and "willfully deceived [plaintiffs] regarding the amount of the alleged overpayments." 790 F. Supp. 2d 1322, 1351 (W.D. Okla. 2011). The court ruled that, under ERISA's "clearly expansive" scope, ERISA preempted the plaintiffs' claims that related to the terms and administration of the policy and the calculation of the benefits amount owed. *Id.* ("Since the reimbursement agreements are part of the terms of the LTD policy and its administration, and plaintiffs' state claims against Liberty relate to the terms and administration of the LTD policy (and seek a remedy for misconduct growing out of the administration of the LTD policy), the court concludes that the claims are preempted."); *see also Settles*, 927 F.2d at 509 (explaining that the

Tenth Circuit "has found that common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan.").

Leprino's claim for breach of contract directly involves the alleged overpayment of claims for benefits available under the terms of the Plan. *See* Compl. ¶¶ 81 and 84. As in *Fortelney*, the claim relates to United's adjudication and payment of claims and ERISA thus preempts it. *See id*. Also, as in *Fortelney*, Leprino's allegations that United somehow deceived it with respect to its investigation or misrepresented information regarding the overpayments do not push Leprino's breach of contract claim outside ERISA's preemptive reach. *See, e.g., Fortelney*, 790 F. Supp. 2d at 1351 (dismissing breach of contract claim despite misrepresentation allegations). Leprino can only maintain a breach of contract claim to the extent it pleads that United had contractual obligations unrelated to the Plan or payment of benefits. As a result, the Court should dismiss Leprino's breach of contract claim as preempted under ERISA.

> ### B.    Leprino's Breach of Fiduciary Duty Claim Fails As A Matter Of Law

Leprino has also failed to state a claim for breach of fiduciary duty (Claim One). Several of Leprino's allegations improperly seek ERISA remedies as an employer sponsor and, in so doing, request relief for its injuries versus injuries to the Plan. *E.g.*, Compl. ¶¶ 3, 33, 54, 75. But ERISA does not permit such relief. Leprino's remaining breach of fiduciary duty allegations hinge on United's alleged approval and payment of fraudulent claims. Leprino, however, has not alleged that United departed from the Plan's terms for claims processing in paying the claims, which well-settled precedent requires to plead a claim for breach of fiduciary duty. *See, e.g.,* Compl. ¶ 74. Leprino's claim for breach of fiduciary duty thus fails as a matter of law.

### a. Leprino cannot remedy injuries to itself as an employer sponsor under ERISA

ERISA does not permit recovery of losses to employer sponsors because it is concerned with losses to the Plan. 29 U.S.C. § 1132(a)(3) (permitting fiduciaries to sue to enjoin acts or practices that "violate[] . . . the plan," "to redress such violations," and "to enforce . . . the terms of the Plan"); 29 U.S.C. § 1132(a)(2) (permitting a fiduciary to sue "for appropriate relief under section 1109"); 29 U.S.C. § 1109 (allowing a fiduciary to pursue breach of fiduciary duty claims "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary . . ."). For example, in *Sharp Electronics Corporation* ("*Sharp*"), 578 F.3d at 507-08, a long-term group disability plan participant sued the plan fiduciary and the employer sponsor after she learned from the plan fiduciary the sponsor had not paid her policy premiums. *Id.* The employer sponsor then asserted an ERISA breach of fiduciary duty cross-claim against the plan fiduciary, claiming that its damages could "be measured by the monies Sharp expended on 'attorneys' fees and related costs in defending itself against'" the beneficiary's lawsuit. *Id.* at 513.

The Seventh Circuit affirmed the district court's dismissal of the ERISA breach of fiduciary duty claim because "[t]he only reasonable understanding" of the sponsor's allegations was that "it [was] seeking a monetary award for itself, individually, as reimbursement for the cost of its legal expenses." *Id.* The court explained that "ERISA does not provide remedies other than those expressly set forth by Congress, and §§ 1109(a) and 1132(a)(3) provide relief only for damage to the Plan." *Id.* Other courts agree. *See, e.g., Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372-74 (4th Cir. 2003) (plan sponsor's payment of amounts out of its own assets did not give rise to claim for breach of fiduciary duty under ERISA); *see Coyne & Delany Co. v.*

*Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712, 715 (4th Cir. 1996) ("Congress did not contemplate that section 502(a)(3) would be used by plaintiffs seeking individual relief."). Courts in this circuit have adopted similar reasoning. *K.H.B. by & through Kristopher D.B. v. UnitedHealthcare Ins. Co.*, No. 2.18-CV-000795-DN, 2019 WL 4736801, at *2 (D. Utah Sept. 27, 2019) ("[T]he plaintiff must seek a remedy that is recoverable only by or on behalf of the plan, not [the plaintiff] individually.") (internal quotation and citation omitted).

As in *Sharp*, Leprino's Complaint is replete with attempts to vindicate its interests as distinct from those of the Plan. Compl. ¶ 33 (alleging United had a duty to provide Leprino certain information), ¶ 54 (describing certain alleged misrepresentations to Leprino), ¶ 73 (alleging United owed Leprino—distinct from the Leprino Plan–a fiduciary duty to administer the Plan), ¶ 75 (alleging Leprino paid for the allegedly fraudulent claims); Prayer for Relief sub-e (requesting that the Court "order[] United to pay interest on all monies *that Leprino* and the Leprino Plan did not have as a result of United's misconduct" (emphasis added)). Even more, like the employer sponsor in *Sharp*, Leprino appears to seek recovery of attorney's fees it paid in lawsuits against the providers who submitted fraudulent claims. *Id.* ¶ 3 (alleging "United has caused Leprino to expend substantial legal fees and costs pursuing recoupment from those providers that United improperly paid"), ¶ 77 (seeking "recovery of Leprino's attorneys' fees and costs"); Prayer for Relief sub-e. In limiting the scope of liability under ERISA, Congress did not provide Leprino this remedy. *Sharp*, 578 F.3d at 513 (declining to permit amendment to rectify similar allegations because it would be "futile").

The Court should follow well-settled ERISA jurisprudence and dismiss those portions of Leprino's breach of fiduciary duty claim that seek remedies for Leprino versus the Leprino Plan.

### b. Leprino's allegations seeking to remedy Plan losses also fail

ERISA requires administrators to pay claims according to the plan. *See* 29 U.S.C. §

1104(a)(1)(A)(i). Indeed, it would be a breach of United's fiduciary duties to *not pay* claims under

the plan where the terms dictate coverage. *See id.* This is because under ERISA, "[e]very employee

benefit plan shall be established and maintained pursuant to a written instrument," and shall

"specify the basis on which payments are made to and from the plan." 29 U.S.C. §§

1102(a)(1), (b)(4). And "[t]he plan administrator is obliged to act 'in accordance with the

documents and instruments governing the plan . . . and ERISA provides no exemption from this

duty when it comes time to pay benefits." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,

555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)) (alterations supplied); *Heimeshoff*

*v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (stating that "once a plan is established,

the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument'")

(quoting 29 U.S.C. § 1102(a)(1)). *See also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090,

1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is

inconsistent with ERISA[.]"); *id.* (explaining that "[b]ecause Defendants complied with the Plan's

lawful terms and were under no legal obligation to deviate from those terms, they provided

Plaintiffs with their benefits due," and the "district court did not err in concluding that Plaintiffs

failed to state a claim. . . .").

Under Rule 12(b)(6), district courts in this circuit have dismissed breach of fiduciary duty

claims brought against plans for paying fraudulent claims so long as the administrator followed

the terms and procedures outlined in the plan. For example, in *Hartford Life & Accident Ins. Co.*

*v. Jones-Atchison*, children of a deceased plan participant brought ERISA and breach of contract

claims against a plan administrator for paying benefits to the decedent's parents where the parents

had falsely sworn in an affidavit that the decedent had no children. No. CIV-17-654-D, 2019 WL

4007218, at *1, 5 (W.D. Okla. Aug. 23, 2019), *aff'd*, No. 20-6135, 2021 WL 4258761 (10th Cir.

Sept. 20, 2021). The children argued that the plan administrator had a duty to conduct a reasonable

search to identify that benefits were paid to the wrong beneficiaries and the plan administrator

violated ERISA when it did not. *Id.* at *2. The court rejected that argument on the grounds that,

"[o]therwise, 'plan administrators would be forced to examine a multitude of external documents

that might purport to affect the dispensation of benefits' and undermine the purpose of ERISA in

minimizing administrative costs, litigation expenses, and avoid unduly discouraging employers

from offering such plans." *Id.* at *5 (quoting *Kennedy*, 555 U.S. at 301).

The *Hartford* case stands for the long-held ERISA proposition that, so long as plan

procedures for claim payment are followed, claim administrators may presume that claims are

legitimate and pay benefits. *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1236 (10th Cir. 2012);

*Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*, 584 Fed. Appx. 918, 919 (10th Cir.

2014) (holding that overpayment allegations "failed to state an ERISA claim as a matter of law"

where claim form was forged). Claims administrators must be able to "look at the plan documents

and records conforming to them to get clear distribution instructions." *Yarbary*, 584 Fed. Appx. at

919. There is no additional requirement that claim administrators scrutinize a claim's origin,

consult external documents to verify its legitimacy, or investigate the background of each

healthcare provider who submits claims. *Foster*, 693 F.3d at 1236 ("Having followed their

established procedures, Defendants were entitled to rely on the legitimacy of the electronic request

and to treat it as a request from Foster, as the participant.").

14

Leprino has not alleged that United failed to comply with the plan's terms when it paid the disputed claims. Instead, Leprino alleges United should have scrutinized the backgrounds of the surgeons and surgical centers associated with submitted claims, *id.* ¶ 43, analyzed their business organization charts or ownership trees, *id.* ¶¶ 41-42, or second guessed the medical necessity of surgeries. Congress could have imposed additional administrative burdens that required United to look under the hood of every submitted claim. But it did not, and it is no surprise why: United could not timely process and pay the Plan's members' benefits if it were required to investigate the legitimacy of each claim it receives beyond what the Plan documents require. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (an administrator is required to render timely decisions under "ERISA's procedural regulations [which] are meant to promote accurate, cooperative, and reasonably speedy decision-making. . . ."). As a result, Plaintiff's claim for breach of fiduciary conduct is fatally deficient and should be dismissed.

## V.    CONCLUSION

For each of the foregoing reasons, United respectfully requests that the Court dismiss Leprino's Complaint with prejudice.

Respectfully submitted this 6th day of May, 2024.

**CROWELL & MORING LLP**

By: */s/ Meshach Rhoades*
    Meshach Rhoades
    Amy Pauli
    Ashleigh Kaspari
    1601 Wewatta Street, Suite 815
    Denver, Colorado 80202
    Telephone: (303) 524-8617
    Facsimile: (303) 524-8650
    mrhoades@crowell.com

apauli@crowell.com
akaspari@crowell.com

Christopher Flynn
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
cflynn@crowell.com

*Attorneys for Defendant United
HealthCare Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May, 2024, a true and correct copy of the foregoing **DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS** was served via CM/ECF upon the following:

Cliff Stricklin
Jared Lax
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
*cstricklin@kslaw.com*
*jlax@kslaw.com*

*Attorneys for Plaintiff,*
*Leprino Foods Company*

William Mavity
Glenn Solomon
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
*wmavity@kslaw.com*
*gsolomon@kslaw.com*

*Attorneys for Plaintiff,*
*Leprino Foods Company*

Katherine A. Bowles
FENNEMORE CRAIG PC
2603 Main Street, Suite 1250
Irvine, CA 92614
Telephone: (949) 752-2911
*kbowles@fennemorelaw.com*

*Attorneys for Plaintiff,*
*Leprino Foods Company*

By: */s/ Barbara L. Werner*
Barbara L. Werner
CROWELL & MORING LLP

17