# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF COLORADO

LEPRINO FOODS COMPANY,

Civil Action No: 1:24-cv-00712

Plaintiff,

-vs-

UNITED HEALTHCARE SERVICES, INC.,

Defendant.

---

## PLAINTIFF LEPRINO FOODS COMPANY'S OPPOSITION TO UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................... 2

III.  ARGUMENT ........................................................................................................... 2

    A.   Leprino's Breach of Contract Cause of Action Is Not Preempted ......................... 4

        1.   ERISA Does Not Preempt Claims That Assert Independent
            Rights Under the ASA ........................................................................... 4

        2.   United's Preemption Cases Are Inapposite ................................................ 5

        3.   United's Preemption Argument Contradicts Clear Congressional
            Intent and Common Sense ...................................................................... 8

    B.   Leprino Has Pleaded a Plausible Fiduciary Claim Under ERISA ......................... 9

        1.   Leprino Has Standing as a Fiduciary to Seek Redress for Losses
            that United Caused to the Leprino Plan ...................................................... 9

        2.   ERISA's Fiduciary Duties Require Far More Than Following the
            Terms of a Plan ................................................................................... 10

        3.   Leprino Has Alleged United Violated Its ERISA Duties Through
            a Variety of Actions, Not a Failure to Follow Plan Terms ......................... 13

IV.   CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airparts Co., Inc. v. Custom Ben. Servs. of Austin, Inc.*,
 28 F.3d 1062 (10th Cir. 1994) ................................................................8

*Allen v. GreatBanc Tr. Co.*,
 835 F.3d 670 (7th Cir. 2016) ...............................................................10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................2

*AutoNation, Inc. v. United Healthcare Ins. Co.*,
 423 F. Supp. 2d 1265 (S.D. Fla. 2006) ............................................7, 12

*Band v. Blue Cross Blue Shield of Mich.*,
 183 F. Supp. 3d 835 (E.D. Mich. 2016).................................................12

*Bd. of Trs. for Hampton Roads Shipping Assoc.—Int'l Longshoremen's Assoc. v.
 Stokley*,
 618 F. Supp. 2d 546 (E.D. Va. 2009) ......................................................6

*Berlin v. Mich. Bell Tel. Co.*,
 858 F.2d 1154 (6th Cir.1988) ...............................................................11

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*,
 12 F.3d 1292 (3rd Cir. 1993) ...............................................................11

*Comau LLC v. Blue Cross Blue Shield of Mich.*,
 2020 WL 7024683 (E.D. Mich. Nov. 30, 2020) ....................................12

*Donovan v. Cunningham*,
 716 F.2d 1455 (5th Cir. 1983) ..............................................................14

*Express Oil Change, LLC v. ANB Ins. Servs.*,
 933 F. Supp. 2d 1313 (N.D. Ala. 2013)...................................................7

*Fortelney v. Liberty Life Assur. Co. of Bos.*,
 790 F. Supp. 2d 1322 (W.D. Okla. 2011) ................................................6

*Foster v. PPG Indus., Inc.*,
 693 F.3d 1226 (10th Cir. 2012) ............................................................13

*Gaither v. Aetna Life Ins. Co.*,
 394 F.3d 792 (10th Cir. 2004) ..............................................................11

*Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.*,
    823 F. Supp. 1191 (E.D. Pa. 1993) ....................................................................8

*Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*,
    2020 WL 8299592 (S.D. Tex. Nov. 9, 2020) ....................................................11

*Hartford Life & Accident Ins. Co. v. Jones-Atchison*,
    2019 WL 4007218 (W.D. Okla. Aug. 23, 2019) ..........................................12, 13

*Horn v. Cendant Operations, Inc.*,
    69 F. App'x 421 (10th Cir. 2003) ....................................................................11

*Hornady Transp. LLC v. McLeod Health Servs., Inc.*,
    773 F. Supp. 2d 622 (D.S.C. 2011)..................................................................12

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ........................................................................10

*Hughes v. Nw. Univ.*,
    63 F.4th 615 (7th Cir. 2023) .............................................................................2

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
    45 F.4th 1236 (10th Cir. 2022) .........................................................................2

*ING Inves. Plan Servs., LLC v. Barrington*,
    2010 WL 3385531 (N.D. Ill. Aug. 24, 2010) ...................................................6

*Krohn v. Huron Mem'l Hosp.*,
    173 F.3d 542 (6th Cir. 1999) ..........................................................................11

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) ........................................................................10

*Metro. Life Ins. Co. v. DePalo*,
    2014 WL 4681094 (D.N.J. Sept. 22, 2014) ......................................................6

*Metro. Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008)........................................................................................10

*Monarch Cement Co. v. Lone Star Indus., Inc.*,
    982 F.2d 1448 (10th Cir. 1992) ........................................................................4

*Nimeth v. Unum Life Ins. Co. of Am.*,
    2022 WL 17836767 (D. Colo. Nov. 29, 2022) ...............................................11

*Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*,
    698 F.2d 320 (7th Cir. 1983) ..........................................................................11

*Ramos v. Banner Health*,
    461 F. Supp. 3d 1067 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) ............................9

*Salzer v. SSM Health Care of Okla. Inc.*,
    762 F.3d 1130 (10th Cir. 2014) ........................................................................................4

*Settles v. Golden Rule Ins. Co.*,
    927 F.2d 505 (10th Cir. 1991) ........................................................................................6

*W.E. Aubuchon Co., Inc. v. BeneFirst, LLC*,
    661 F. Supp. 2d 37 (D. Mass. 2009) ...........................................................................4, 5, 7, 8

*Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*,
    584 F. App'x 918 (10th Cir. 2014) .........................................................................13

**Statutes**

29 U.S.C. § 1001 ..............................................................................................................8

29 U.S.C. § 1104 .........................................................................................................3, 10

29 U.S.C. § 1105 .............................................................................................................9

29 U.S.C. § 1132 .........................................................................................................3, 5, 9

## I.    INTRODUCTION

Leprino Foods Company ("Leprino") contracted with United Healthcare Services, Inc. ("United") to administer Leprino's self-funded Health and Welfare Plan ("Leprino Plan") for Leprino employees and their family members ("Plan Participants"). United repeatedly breached both its fiduciary duties under ERISA and the terms of its Administrative Services Agreement ("ASA"), by: (a) paying fraudulent claims from Leprino Plan assets, (b) misleading Leprino about the losses this caused to the Leprino Plan, (c) misleading Leprino about subsequent law enforcement investigations and recovery efforts that related to United's payment of fraudulent claims, and (d) impeding Leprino's own efforts to recover funds that United wrongfully paid out of the Leprino Plan.

United's misconduct caused substantial losses to the Leprino Plan and the Plan Participants who depend on it. It also forced Leprino to spend substantial time and resources trying to remedy United's failure to do the job it was contracted to do. To redress United's breach of these distinct legal duties and the different harms that they caused, Leprino exercised its legal rights to sue for (1) breach of contract against United on Leprino's own behalf, and (2) ERISA breach of fiduciary duty on behalf of the Leprino Plan.

United wants to mislead this Court into believing that Leprino has no recourse for the harm United's breaches caused to Leprino, the Leprino Plan, and the Plan Participants. But United's Motion to Dismiss ("Motion") advances straw man arguments that mischaracterize both the claims pleaded in Leprino's Complaint and the basic tenets of ERISA. United contends that Leprino cannot sue for breach of contract because ERISA's remedial scheme shields United from liability for contract breaches, but in the next breath, United maintains Leprino has no ERISA remedies either, because ERISA allegedly only allows fiduciaries to be sued for failing to follow plan terms.

1

But ERISA does not work like United pretends it does. On the contrary, the law permits Leprino to pursue both causes of action based on the facts alleged here.

The Complaint pleads plausible claims to hold United accountable for failing to meet the contractual duties that it agreed to perform for Leprino under the ASA, and also, failing to meet the fiduciary duties that United owed to the Leprino Plan and the Plan Participants under ERISA.

United's Motion should therefore be denied.

## II.    LEGAL STANDARD

On a motion to dismiss, the court "accept[s] the well-pleaded allegations of the complaint and construe[s] them in the light most favorable to the plaintiff." *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022). As long as a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," a plaintiff's claims must survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, contrary to United's suggestion, there is no heightened pleading standard for ERISA breach of fiduciary duty claims. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (rejecting argument that ERISA requires heightened pleading standard and noting that the Supreme Court's decision in "*Dudenhoeffer* signals that the duty of prudence inquiry is 'context specific,' but no more").

## III.    ARGUMENT

Leprino's breach of contract claim under the ASA is not preempted by ERISA. It is well-settled in the Tenth Circuit (and beyond) that ERISA does not preempt every common law claim that has some connection to an ERISA plan. This is especially true where, as here, the contract claim asserts independent rights under a separate business agreement and does not involve a beneficiary suing to receive benefits due under the terms of an ERISA plan. United's inapposite preemption authorities focus on beneficiaries seeking to recover plan benefits – e.g., coverage for

death, disability, health, etc. But this case involves one commercial entity suing another commercial entity and is based on separate contractual duties that arise **outside** any ERISA plan benefits. If courts were to apply ERISA preemption as broadly as United urges, it would have swallowed whole all contractual agreements between corporate plan sponsors and third-party claims administrators.   The law provides no such immunity to United for breach of the administrative services contract here.

Leprino has also adequately pled a breach of fiduciary duty claim under ERISA. As a fiduciary, Leprino has standing under 29 U.S.C. § 1132(a)(2) to sue on behalf of the Leprino Plan to recover losses caused by another fiduciary like United breaching the duties it owes under 29 U.S.C. § 1104. United's recasting of Leprino's fiduciary duty claims as an effort by Leprino to vindicate its own rights ignores what is pled in the Complaint. *See* Compl. ¶ 5 ("Leprino brings this action on its own behalf, *and as a fiduciary on behalf of the Leprino Plan*.") (emphasis added); *id.* ¶ 71 ("Leprino brings this Claim under 29 U.S.C. §§ 1132(a)(2), (a)(3), 1104(a), and 1109(a). Leprino has standing to bring this Claim under these provisions as an ERISA fiduciary for the Leprino Plan."). Leprino's fiduciary duty claim seeks redress for losses that United caused to the Leprino Plan when it paid fraudulent claims from Leprino Plan assets, and when it made misrepresentations to Leprino regarding those losses and on-going investigations into the losses. United advances a straw man argument that Leprino's ERISA fiduciary breach claim fails because Leprino "has not alleged that United departed from the Plan's terms for claims processing in paying the claims." Mot. at 10. But United's ERISA duties go well beyond the duty to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a). The crux of Leprino's breach of fiduciary duty claim is that United failed to satisfy ERISA's duties of prudence and loyalty because it recklessly paid fraudulent claims from Leprino Plan assets for years, made

misrepresentations to Leprino about those fraudulent claims and the law enforcement investigations into them, and then thwarted Leprino's efforts to seek recovery of the Leprino Plan assets that United handed to fraudsters.

## A.    Leprino's Breach of Contract Cause of Action Is Not Preempted

### 1.    *ERISA Does Not Preempt Claims That Assert Independent Rights Under the ASA*

The scope of ERISA preemption is "not unlimited." *Monarch Cement Co. v. Lone Star Indus., Inc.*, 982 F.2d 1448, 1452 (10th Cir. 1992). It is well-settled in the Tenth Circuit that ERISA does not preempt common law breach of contract claims that assert independent rights that exist outside the terms and conditions of ERISA plans. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1135 (10th Cir. 2014).

In *Salzer*, a plaintiff's claims for breach of contract and other state law claims against a health care provider who attempted to collect from him directly instead of from his health insurance carrier were not preempted by ERISA because the plaintiff did "not assert claims for benefits under his Plan, nor does he seek to enforce or clarify rights under the Plan. Instead, he complained that SSM did not fulfill its obligation to submit charges for his care to the insurer, but instead billed him directly." *Id.* at 1135. The Tenth Circuit explained that, because the plaintiff's state law claims sought "to enforce contracts other than the Plan," they implicated an "independent legal duty" beyond the ERISA plan and thus were not preempted. *Id.* (internal quotation marks omitted).

Other circuits have reached the same conclusion. For example, *W.E. Aubuchon Co., Inc. v. BeneFirst, LLC*, 661 F. Supp. 2d 37, 46 (D. Mass. 2009), held that a state law contract action by two employee benefit plans against a third-party administrator was not preempted because the

claims arose under the ASA's requirements that the administrator "adhere to certain performance standards in the payment of claims" and "maintain certain records." *Id.* at 47. The court distinguished the ASA and the plan, noting that the ASA was "a business contract" between the plans and their administrator. The plans brought a state law claim "to enforce the terms of that contract," and their claim was not preempted. *Id.*

Leprino seeks to enforce the terms of the ASA and redress United's failure to perform the duties that it owed under that business contract. Through the breach of contract claim, Leprino can recover damages from those failures that are distinct from the return of the plan assets that Leprino is suing to recover under ERISA. Leprino has alleged misconduct by United that exists independent of whether United correctly applied the terms of the Leprino Plan. Leprino alleges that United circumvented the ASA's requirement that it share records with Leprino by mischaracterizing those records as proprietary information that the ASA allowed United to withhold. Compl. ¶¶ 57, 59-61, 69.

Leprino also alleges that United violated the ASA by making misrepresentations to Leprino about the losses suffered by the Leprino Plan and United's investigation into those losses. *Id.* ¶¶ 54-56. Leprino further alleges that United paid patently fraudulent claims despite its promise to perform fraud and abuse management at industry standards. *Id.* ¶ 26. These were breaches of United's contractual duties to Leprino under the ASA and can be adjudicated by the Court without reference to the terms of the Leprino Plan. Leprino's contract claim seeks redress for the time, money, and additional harms that Leprino incurred when it was forced to perform the obligations that United was hired, but failed, to do under the ASA.

2. *United's Preemption Cases Are Inapposite*

5

Nearly all the cases United cites for its preemption argument involve situations that involve plan participants and beneficiaries asserting common law claims that seek the payment of benefits, causes of action that are analogous to the specific cause of action that ERISA already provides for under 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").  These cases involve claims that are irrelevant to the present lawsuit.

Furthermore, the few preemption cases United cites outside the context of beneficiaries suing for plan benefits still do not involve claims brought under a separate contract like the ASA that assert independent rights arising outside of an ERISA plan – and most were from trial courts within other circuits. *See Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991) (estate of the beneficiary suing for wrongful death caused by heart attack upon learning his benefits were being terminated); *Fortelney v. Liberty Life Assur. Co. of Bos*., 790 F. Supp. 2d 1322, 1351 (W.D. Okla. 2011) (beneficiaries suing for breach of contract and fraud claims centered on calculation of the amounts of overpayments); *Metro. Life Ins. Co. v. DePalo*, 2014 WL 4681094, at *10 (D.N.J. Sept. 22, 2014) (unlawful retention and conversion claims asserted by insurer against beneficiary to recover benefits mistakenly paid to ERISA beneficiary "clearly arise from an ERISA plan, direct the Court's inquiry to the Plan, require an analysis of the Plan's terms, and involve the calculation and payment of benefits due to a Plan participant"); *Bd. of Trs. for Hampton Roads Shipping Assoc.—Int'l Longshoremen's Ass'n v. Stokley*, 618 F. Supp. 2d 546, 553 (E.D. Va. 2009) (contract claim by plan administrator to recoup payments from beneficiary based on a contract that was "merely the application form that [the beneficiary] filled out in order to gain the benefit of the [ERISA plan's] terms" and to receive plan benefits); *ING Inves. Plan Servs., LLC v. Barrington*,

2010 WL 3385531, at *2 (N.D. Ill. Aug. 24, 2010) (quantum meruit and quasi contract claims brought by insurer against beneficiaries to recoup overpayment of ERISA plan benefits depended on the terms of the ERISA plan). United's preemption cases involve plaintiffs that seek the payment of plan benefits under the guise of state law. By contrast, Leprino seeks enforcement of an independent commercial contract.

The only two cases United could muster that involve a separate contract also from courts within other circuits – did not assert independent rights arising under those contracts, but instead, only asserted threadbare claims that collapsed back into the terms and conditions of an ERISA plan. *See AutoNation, Inc. v. United Healthcare Ins. Co.*, 423 F. Supp. 2d 1265, 1270 (S.D. Fla. 2006) (finding that separate administrative service agreement was merely a vehicle "wherein the Defendant agreed to administer the Plan" and claims); *Express Oil Change, LLC v. ANB Ins. Servs., Inc.*, 933 F. Supp. 2d 1313, 1335-36 (N.D. Ala. 2013) (relying on *AutoNation* to find that breach of contract actions against administrators for failing to detect excess overpayments were preempted where the "[c]omplaint does not state with any specificity which contract was breached, much less any specific provision that gives rise to" an independent right that does not relate directly to [the ERISA] health benefits plan" and contrasting such preempted claims with the viable contract claims alleged in *W.E. Aubuchon*, discussed above).

Thus, United's cases demonstrate only that ERISA preempts state law claims involving determining the proper amount of payment under an ERISA plan for coverage under the terms of a Plan. Leprino's claim has no such characteristics.  Rather, it features an employer, its contracted claims administrator, and contractual obligations independent of the Plan. Thus, the claim is not within the scope of ERISA preemption.

3. _United's Preemption Argument Contradicts Clear Congressional Intent and Common Sense_

United's argument that the law provides no remedy for its breach of duty under the ASA or the duties it owed under ERISA contravenes congressional intent and defies common sense. The Tenth Circuit has held that "the ultimate touchstone in determining preemption is the congressional purpose in enacting ERISA." *Airparts Co., Inc. v. Custom Ben. Servs. of Austin, Inc.*, 28 F.3d 1062, 1066 (10th Cir. 1994).

It is well settled that ERISA does not exist to insulate insurance companies like United from the consequences of their wrongdoing. Rather, "ERISA was created *for the benefit of plan beneficiaries and in order to regulate, not benefit or protect, fiduciaries*." *Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.*, 823 F. Supp. 1191, 1195 (E.D. Pa. 1993) (emphasis added); *see also* 29 U.S.C. § 1001(b) (explaining that Congress enacted ERISA to protect "the interests of plan participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting" of financial information and "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans").

Far from "weighing [plans] down with administrative burdens and unpredictable liabilities," as United alleges, the enforcement of ASAs against administrators like United protects plans and advances efficiencies. Mot. at 1. As the Court in *W.E. Aubuchon* noted, enforcement of the terms of an ASA against a plan administrator does "not interfere with the administration of the Plan; to the contrary, it would promote and facilitate that administration, as it would permit the Plan to enter into binding commitments with outside vendors of services. Indeed, without the ability to enter into enforceable contracts, it is difficult to see how the Plan could be administered in any rational fashion." *W.E. Aubuchon*, 661 F. Supp. 2d at 47-48.

Misconstruing ERISA United's way "would not simply leave a gap in the enforcement scheme; it would leave a gigantic chasm." *Id.* at 48. And "[t]here is no reason to believe that Congress intended such an irrational result." *Id.* As the Tenth Circuit has succinctly put it, there is "no congressional purpose to be furthered by denying an ERISA plan a state cause of action against allegedly negligent third-party service providers." *Airparts*, 28 F.3d 1062 at 1066.

**B.    Leprino Has Adequately Pled a Fiduciary Claim Under ERISA**

1. *Leprino Has Standing as a Fiduciary to Seek Redress for Losses that United Caused to the Leprino Plan*

United ignores what the Complaint actually pled, and instead, argues that Leprino seeks only to vindicate its interests as distinct from those of the Plan. *See* Mot. at 12. Not so. *See* Compl. ¶ 5; (Leprino brings action "as a fiduciary on behalf of the Leprino Plan"); *id.* ¶ 71 ("Leprino has standing to bring this Claim under [29 U.S.C. §§ 1132(a)(2), (a)(3), 1104(a), and 1109(a)] as an ERISA fiduciary for the Leprino Plan.").

United also ignores that ERISA confers standing on fiduciaries like Leprino to sue any other fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" to compel that fiduciary "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109.

In fact, ERISA affirmatively obligates a fiduciary like Leprino to make "reasonable efforts under the circumstances" to remedy the breach of another fiduciary like United. *See* 29 U.S.C. § 1105. And if Leprino fails to do so, the Tenth Circuit has made clear that Leprino could be held liable for harm that United caused to the Leprino Plan. *See, e.g.*, *Ramos v. Banner Health*, 461 F.

Supp. 3d 1067, 1119 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) (affirming liability for fiduciary's failure to monitor co-fiduciary who caused harm to ERISA plan).

Moreover, to the extent that Leprino *does* attempt to vindicate its own interests as distinct from those of the Leprino Plan and Plan Participants, Leprino has done so in its separate breach of contract claim asserting independent rights that arise under the ASA. *See supra* Sec. A.1.

2. *ERISA's Fiduciary Duties Require Far More Than Following the Terms of a Plan*

To state a claim for a breach of fiduciary duty under ERISA, a plaintiff need only plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

United baselessly argues that Leprino must allege "that United departed from the Plan's terms for claims processing in paying the claims" to state a claim for breach of fiduciary duty. Mot. at 10. Despite referencing "well-settled precedent," *id.*, United provides no authority for its sweeping proposition that satisfying ERISA's fiduciary duties is a simple matter of complying with plan terms. *See id.* That is because there is no such authority; even the plain text of ERISA requires far more from fiduciaries.

ERISA imposes a duty of loyalty that requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries" while "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i) & (ii).

ERISA also imposes a duty of prudence that requires a fiduciary to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

The Supreme Court confirmed that these duties of loyalty and prudence "impose[] higher-than-marketplace quality standards" on ERISA fiduciaries. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (duties of an ERISA fiduciary deemed "highest known to the law") (internal quotation omitted). ERISA's duty of loyalty requires fiduciaries to avoid giving misleading or inaccurate information. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1499 (10th Cir. 1995) ("[A] fiduciary may not materially mislead those to whom the duties of loyalty and prudence . . . are owed.") (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988)); *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) ("Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in . . . ERISA.") (citation omitted). The duty of loyalty also carries an affirmative obligation to "inform when the [fiduciary] knows that silence might be harmful." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999) (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993)); *see also Horn v. Cendant Operations, Inc.*, 69 F. App'x 421, 427 (10th Cir. 2003) (unpublished) ("[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."); *Nimeth v. Unum Life Ins. Co. of Am.*, 2022 WL 17836767, at *10 (D. Colo. Nov. 29, 2022) ("The fiduciary . . . has 'not only a negative duty not to misinform, but also an affirmative duty to inform when the [fiduciary] knows that silence might be harmful.'") (quoting *Bixler*, 12 F.3d at 1300).

In the context of plan administration, the Tenth Circuit has recognized that ERISA's duties of loyalty and prudence also require fiduciaries "to protect the plan's assets against spurious claims." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-08 (10th Cir. 2004).

Likewise, courts across the country have found that allegations that a claims administrator who fails to protect plan assets from dubious claims are sufficient to state a claim for breach of fiduciary duty under ERISA. *See, e.g.*, *Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*, 2020 WL 8299592, at *3 (S.D. Tex. Nov. 9, 2020) (complaint's "factual allegations, though sparse, [were] sufficient to state a plausible claim for breach of ERISA's fiduciary duty" in an action against Aetna for failing to detect fraudulent claims where "red flags [that] should have caused Aetna to deny, or at least investigate those claims"); *Comau LLC v. Blue Cross Blue Shield of Mich.*, 2020 WL 7024683, at *5, 8 (E.D. Mich. Nov. 30, 2020) (allowing breach of fiduciary duty claim to proceed on allegations that plan administrator "knowingly paid inflated healthcare claims to providers . . . and that it failed to update its billing system to avoid the payment of improper claims"); *Band v. Blue Cross Blue Shield of Mich.*, 183 F. Supp. 3d 835, 837-38, 842 (E.D. Mich. 2016) (allowing plan administrator's breach of fiduciary duty claim to proceed on allegations that the self-funded plan's claims administrator "used [p]lan assets to overpay for [medical] services"); *Hornady Transp. LLC v. McLeod Health Servs., Inc.*, 773 F. Supp. 2d 622, 626-27, 633 (D.S.C. 2011) (allowing breach of fiduciary duty claim to proceed against the claims administrator of a self-funded plan, "seeking recovery of alleged overpayments to a medical provider"). Indeed, one of United's inapposite preemption cases allowed claims against *United* to proceed when the corporate plan sponsor alleged that United breached its fiduciary duties under ERISA by failing to detect excessive overpayments, paying benefits to terminated employees, and then failing to fix its system to address those errors. *AutoNation,* 423 F. Supp. 2d at 1267.

3. _Leprino Has Alleged United Violated Its ERISA Duties Through a Variety of Actions, Not a Failure to Follow Plan Terms_

In support of its facetious claim that ERISA's fiduciary duties require only compliance with plan terms, United cites inapplicable cases involving run-of-the-mill allegations of isolated benefit overpayments resulting from individual beneficiaries or participants submitting information that turned out to be false.

For example, in _Hartford Life & Accident Ins. Co. v. Jones-Atchison_, 2019 WL 4007218, at *5 (W.D. Okla. Aug. 23, 2019), the Oklahoma court limited its analysis to the narrow question of whether "ERISA imposes a duty on [the plan administrator] to investigate [the plan participant's] sworn statements and claim for benefits by searching non-plan documents to identify other potential beneficiaries." The plan administrator in _Hartford Life_ relied on a sworn statement made under legal penalty to disburse a life insurance payment to one beneficiary instead of other beneficiaries. _Id._ at *6. The administrator "had no reason to doubt [the] sworn affidavit," and it was not required to "investigate the veracity of sworn statements regarding the existence of surviving children or other qualifying beneficiaries." _Id._ at *7. The facts were far different than what has been pled here against United. Indeed, the Complaint sets forth details about how there was extensive indicia of fraud on the face of the claims, and how United was aware the claims were fraudulent, misled Leprino about the FBI investigation, and improperly discouraged Leprino into not pursuing the providers sooner, while United continued to pay claims it had every reason to know were bogus. _See_ Compl. ¶¶ 37, 44-48. The _Hartford Life_ holding does not limit fiduciary duties to following plan terms and its facts do not apply here.

_Foster v. PPG Indus., Inc._, 693 F.3d 1226 (10th Cir. 2012), also relied on by United, is inapposite in the same way. There, the defendant was an employer, and plan "had no reason to

suspect that anything was amiss" when the defendant's ex-wife, "masquerading" as him, withdrew his plan account balance. *Id.* at 1236-37. Because she had followed the plan's established procedures in requesting withdrawals, the defendants "were not obligated to inquire further as to the actual identity of the requester." No one disputes that a plan administrator diligently performing its duties "is not obligated to inquire further" when it has "no reason to suspect that anything was amiss." *Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*, 584 F. App'x 918, 919 (10th Cir. 2014). But this is not the situation presented by Leprino against United. Here, the Complaint explains that United had notice of the fraudulent scheme but chose to continue making payments, and worse. Compl. ¶¶ 44-48.

United's argument that ERISA requires nothing more than adherence to plan terms also ignores the full scope of its duties as a fiduciary. This is not simply a dispute over whether United got the paperwork right when it paid claims for benefits under the Leprino Plan. Rather, Leprino has alleged that United recklessly paid suspicious and spurious claims that were submitted by known fraudsters; failed to take any meaningful steps to recover the Plan assets that United handed over to fraudsters; lied to Leprino and concealed information about the half-hearted recovery attempts United did eventually take; misrepresented the ongoing law enforcement investigations into the fraudulent claims that United continued to pay for years; and then, once Leprino became aware of the fraud, actively impeded the steps that Leprino took to recover Plan assets when United would not. *See* Compl. ¶¶ 1, 4, 37, 43-44, 48, 74, 79.

It's hard to imagine what allegations United would admit to being sufficient to plead breach of fiduciary duty if these allegations are not enough to plead breach of the duties that courts have called the "highest known to the law."

United's attempted "pure heart and empty head" defense bears no resemblance to what Leprino set forth in the Complaint. *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983).

## IV.    CONCLUSION

For the reasons stated above, the Motion should be denied. In the alternative, Leprino seeks leave to amend its complaint.

Respectfully submitted this 11 day of June 2024.

By: */s/ Cliff Stricklin*

Cliff Stricklin
Jared Lax
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
Tel: (720) 535-2300
Fax: (720) 535-2400
Email: cstricklin@kslaw.com
Email: jlax@kslaw.com

Glenn E. Solomon
William H. Mavity
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4330
Fax: (213) 443-4310
Email: gsolomon@kslaw.com
Email: wmavity@kslaw.com

Katherine Anne Bowles
FENNEMORE LLP
2603 Main Street
Suite 1250
Irvine, CA 92614
Tel: (949) 752-2911
Fax: (949) 752-0953
Email: kbowles@fennemorelaw.com

## **CERTIFICATE OF SERVICE**

I certify that on this 11th day of June, 2024, a true and correct copy of the foregoing PLAINTIFF LEPRINO FOODS COMPANY'S OPPOSITION TO UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS was filed via the CM/ECF system which will send notification of such filing to all counsel of record.


*/s/ Cliff Stricklin*

Cliff Stricklin


*Attorney for Plaintiff Leprino Foods Company*